# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| LATONYA NIX WILEY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CITY OF ATLANTA, GEORGIA, | ) | |
| and CATHY HAMPTON, | ) | |
| individually and in her official | ) | |
| capacity as City Attorney, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

### 1.

Plaintiff LaTonya Nix Wiley ("Ms. Wiley" or "Plaintiff") respectfully
submits the following Complaint against Defendants City of Atlanta, Georgia, and
Cathy Hampton ("Hampton"), individually and in her official capacity as City
Attorney, (collectively "Defendants"), alleging retaliatory termination in violation
of the First and Fourteenth Amendments to the United States Constitution,
42 U.S.C. § 1983, and the Georgia Whistleblower Act, O.C.G.A. § 45-1-14.

## INTRODUCTION

2.

On or around, December 23, 2014, Ms. Wiley filed a lawsuit against her former employer, Henry County, Georgia, and the Henry County Board of Commissioners, alleging unlawful termination in violation of the Georgia Whistleblower Act, based on her disclosures of and refusal to participate in unlawful conduct during her employment as the County Attorney.

3.

On or around, January 5, 2015, less than a week after she voluntarily informed Defendants, as her new employers, of her whistleblower lawsuit against Henry County and its Board of Commissioners, Ms. Wiley was unlawfully terminated from her new job with the City of Atlanta's Department of Law because of her pending whistleblower lawsuit.   Defendants' decision to terminate Ms. Wiley on account of her protected whistleblower activity violated her clearly established free speech rights under the First and Fourteenth Amendments and her rights as a public employee under the Georgia Whistleblower Act.

## JURISDICTION AND VENUE

### 4.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has further jurisdiction over Ms. Wiley's state law claims pursuant to 28 U.S.C. § 1367.

### 5.

This Court has authority to issue the requested declaratory relief under 28 U.S.C. § 2201.

### 6.

This Court has authority to issue the requested injunctive relief under FED. R. CIV. P. 65 and 28 U.S.C. § 1343(a)(3).

### 7.

This Court is authorized to award the requested damages under 28 U.S.C. § 1343(a)(3).

### 8.

This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988.

### 9.

This Court is an appropriate venue for all of Ms. Wiley's claims pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, all Defendants reside

within the District and division, and all of the events giving rise to Ms. Wiley's claims alleged herein were committed within the Northern District of Georgia.

## THE PARTIES

### 10.

LaTonya Nix Wiley is a citizen of the State of Georgia and a resident of Henry County, Georgia.  She submits herself to the jurisdiction of this Court.

### 11.

The Defendant City of Atlanta is a municipal corporation chartered under the State laws of Georgia, and is subject to the venue and jurisdiction of this Court. The City may be served with a copy of this Complaint and process by serving Mayor Kasim Reed at his business address at 55 Trinity Avenue, Atlanta, Georgia 30303.

### 12.

The City of Atlanta is a "public employer" within the meaning of O.C.G.A. § 45-1-4.

### 13.

Cathy Hampton is, and was at all times relevant to this Complaint, the City Attorney for the City of Atlanta.  Hampton may be served with a copy of this

Complaint and process by at her business address at 55 Trinity Avenue S.W., Suite 5000, Atlanta, Georgia 30303.

14.

The City of Atlanta Charter, Article III, Chapter 3, Section 3-303, establishes the position of City Attorney.

15.

As the duly appointed City Attorney, Cathy Hampton is responsible for the administration of the City Attorney's office and has the power to appoint and remove all or any of the City Attorney's assistant or associate city attorneys, under the Atlanta Code of Ordinances ("City Code"), Sec. 2-397.

16.

The City Attorney, in her official capacity, constitutes a "public employer" within the meaning of O.C.G.A. § 45-1-4.

17.

Cathy Hampton was personally responsible for the decision to unlawfully terminate Ms. Wiley's employment.

18.

Cathy Hampton is sued in her individual capacity under 42 U.S.C. § 1983 and in her official capacity as City Attorney under 42 U.S.C. § 1983 and the Georgia Whistleblower Act.

## **THE FACTS**

19.

Prior to her employment with the City of Atlanta, Ms. Wiley had a lengthy and distinguished career in civil service, beginning in April 2004 as Deputy County Attorney for Henry County, Georgia, and culminating in her appointment as the County Attorney for Henry County, Georgia in December 2008.

20.

On or around September 2, 2014, Ms. Wiley was unlawfully terminated from her position as the County Attorney for Henry County, Georgia, in retaliation for her refusal to participate in ongoing illegal, unethical, and inappropriate conduct and for her repeated disclosures of violations of the laws, rules, and regulations. Among other things, Plaintiff was terminated at the behest of a County Commissioner for whom she worked when she refused to throw a $100 million ad valorem tax appeal case in order to benefit the personal friends and private interests of this elected official.  This same elected official retaliated against

Ms. Wiley for disclosing the existence of a no bid $13 million health insurance contract that benefitted the elected official's personal friend and insurance broker in the amount of $700,000 annually.

21.

Following her unlawful termination from her position with Henry County, Ms. Wiley sought new employment that would leverage her extensive experience as a public sector service attorney.

22.

In or around September, 2014, Ms. Wiley applied for a position with the City of Atlanta, Department of Law. The City put Ms. Wiley through an extensive vetting process, including five separate interviews, to carefully evaluate her as a candidate for the opening. City employees spent significant time with Ms. Wiley to make sure she was a good fit and the best candidate for the position.

23.

Following this exhaustive vetting process, Ms. Wiley was offered the position of Chief Counsel of Aviation in the City of Atlanta, Department of Law, on or around November 26, 2014.

24.

As Chief Counsel of Aviation, Ms. Wiley reported directly to Kimberly Patrick, the Deputy City Attorney over the Department of Law's Aviation Group. Patrick reported directly to City Attorney Hampton.

25.

Ms. Wiley started her employment with the City as the new Chief Counsel of Aviation on or around December 4, 2014.

26.

Ms. Wiley was enthusiastic about her new position with the City and quickly adjusted to her new responsibilities.

27.

During her first three weeks of employment with the City, Ms. Wiley had enjoyed her work and received only positive feedback from Patrick.

28.

On or around December 19, 2014, Ms. Wiley filed suit in the Superior Court of Henry County against her former employer, Henry County, Georgia and the Henry County Board of Commissioners seeking redress for her unlawful termination in violation of the Georgia Whistleblower Statute.  That lawsuit is still pending.

29.

After filing, Ms. Wiley became aware that her lawsuit against Henry County and the Board of Commissioners was attracting local media attention, due to the legitimate public interest in matters asserted therein.

30.

As a professional courtesy to her new employer, Ms. Wiley decided to advise her employer, the City of Atlanta, of the lawsuit given the local media attention surrounding her case.  On Tuesday, December 30, 2014, Ms. Wiley contacted her immediate supervisor, Patrick – who was out on vacation – and informed Patrick of the whistleblower lawsuit.  At Patrick's request, Ms. Wiley emailed Patrick a copy of the Complaint.

31.

After receiving a copy of the Complaint, Patrick called Ms. Wiley back a few hours later and sounded upset. Patrick declared that "this is awful" and directed Ms. Wiley to contact Hampton immediately.

32.

Ms. Wiley understood from her conversation with Patrick that Hampton was not going to be happy about Ms. Wiley's lawsuit, because Hampton had previously been the subject of a whistleblower lawsuit by a former City of Atlanta employee.

33.

As directed by Patrick, Ms. Wiley sought to speak to Hampton, so Hampton came to Ms. Wiley's office, on or about December 31, 2014.

34.

During the conversation in Ms. Wiley's office with Hampton, Ms. Wiley personally informed Hampton that she had filed a lawsuit against her former employer.

35.

Hampton responded to Ms. Wiley that she did not have time to discuss the details that day.  Instead, she instructed Ms. Wiley to set an appointment on her calendar for the following Wednesday, January 7, 2015, after the New Year's holiday.

36.

During the conversation with Ms. Wiley, Hampton told Ms. Wiley that during their January 7th meeting Ms. Wiley needed to be prepared to explain whether and how the lawsuit would affect the Mayor.

37.

During that conversation, Hampton also incredibly told Ms. Wiley that she needed to justify why she should not be placed on a leave of absence because of her lawsuit.

38.

Ms. Wiley was stunned by these comments and confused as her lawsuit against her former employer had nothing to do with her employment with the City of Atlanta nor any public service, policy or transaction involving the City of Atlanta.

39.

Upon information and belief, Patrick shared the contents of Ms. Wiley's lawsuit with Hampton.

40.

Per Hampton's instructions, Ms. Wiley contacted Hampton's assistant and scheduled an appointment to meet with Hampton on Wednesday, January 7, 2015.

41.

Following Ms. Wiley's conversation with Hampton and Patrick, Ms. Wiley was anxious and concerned that Hampton's response to Ms. Wiley's disclosure of her whistleblower lawsuit had placed her job with the City in jeopardy, even

though her lawsuit had nothing to do with the City of Atlanta or any of the duties that Ms. Wiley performed for the City.

42.

The following Monday, January 5, 2015, when everyone returned to the office from the holiday break, Hampton's assistant cancelled Ms. Wiley's previously scheduled meeting on January 7, 2015 without any explanation.

43.

Throughout the morning of January 5, 2015 in the office, Patrick uncharacteristically avoided contact with Ms. Wiley, and when they did interact, Patrick was cold and dismissive – unlike the previously warm and collegial relationship that Ms. Wiley had experienced before with Patrick.

44.

That same morning, Hampton convened a meeting with all of the "Deputies and Chiefs" in a conference room.  When Ms. Wiley entered the room, Hampton did not speak to her.

45.

During the meeting, Ms. Wiley noticed that Patrick appeared visibly upset and realized that something was seriously wrong.

46.

Immediately after the meeting, Hampton excused everyone except Patrick and Robert Godfrey, the Chief Counsel who handles employment litigation for the City.

47.

A few minutes later, Patrick called Ms. Wiley into her office, where Godfrey was also waiting.  In front of Godfrey, Patrick told Ms. Wiley that she was being terminated, effective immediately.

48.

Ms. Wiley asked Patrick for an explanation for her termination. Patrick refused to explain and coldly said over and over that Ms. Wiley's "services were no longer needed."  When Ms. Wiley asked if she was being terminated because of her whistleblower lawsuit, Patrick refused to provide any further explanation for Ms. Wiley's abrupt termination.

49.

After Ms. Wiley's repeated request for an explanation for her abrupt termination, Patrick offered Ms. Wiley the option of resigning her employment with the City of Atlanta.

50.

Because Ms. Wiley had not done anything wrong and needed her job with the City, Ms. Wiley refused to resign her employment.

51.

Following Ms. Wiley's termination, the City of Atlanta falsely reported to the Georgia Department of Labor that Ms. Wiley had voluntarily resigned her position.

52.

The City of Atlanta has adopted a "Bill of Rights" to guide the City Council, Mayor, and all departments of City government.  Section 2 of the City's Bill of Rights states that "[t]he City of Atlanta shall not interfere with the rights of freedom of speech, of freedom of the press, to petition the government, or of peaceable assembly."

53.

Under the Atlanta Code of Ordinances ("City Code"), Sec. 114-84(b)(4), Ms. Wiley's position of Chief Counsel of Aviation was an "unclassified" position with the City of Atlanta.  Therefore, Ms. Wiley's employment was not protected under the civil service provisions of City Code with respect to discipline and termination.

54.

Under City Code 2-397, Ms. Wiley served at the pleasure of City Attorney Hampton, as the City Attorney served as the appointing authority for all employees of the Department of Law.

55.

Ms. Wiley was terminated from her employment with the City at Hampton's discretion as the official appointing authority under the City Code.

56.

Ms. Wiley's whistleblower lawsuit against Henry County, Georgia and the Henry County Board of Commissioners constitutes a matter of public concern, because Ms. Wiley's lawsuit brought to light governmental misconduct and a breach of the public trust by certain elected officials in Henry County.

57.

Ms. Wiley's whistleblower lawsuit had no impact on the effective operation of the City or the provision of services to the City by the Department of Law, because the City was not a party to the lawsuit and the allegations contained in the lawsuit had nothing to do with Ms. Wiley's employment with the City.  Moreover, during Ms. Wiley's entire ten (10) year history with Henry County, Henry County never had any intergovernmental dealings with the City of Atlanta; there were no

existing or pending legal transactions with the City of Atlanta; and there were no joint or mutual public policy initiatives between Henry County and the City of Atlanta.

58.

City Attorney Hampton decided to terminate Ms. Wiley's employment, just one month after hiring her, as a direct result of Ms. Wiley engaging in protected speech on one or more matters of public concern.

59.

Hampton's decision to terminate Ms. Wiley violated her clearly established right to engage in free speech as a whistleblower and also as a citizen speaking on one or more matters of public concern.

60.

Hampton is individually liable for her decision to terminate Ms. Wiley, because as City Attorney for the City of Atlanta, Hampton had no valid interest in Ms. Wiley's protected speech directed against Henry County and its Board of Commissioners.

61.

The City of Atlanta is liable for Hampton's actions in terminating Ms. Wiley, as she was the appointing authority for all employees in the

Department of Law and was exercising discretion expressly provided to her under City Code Sections 2-397 and 114-84. Hampton's decision to terminate Ms. Wiley was final and not subject to review by any higher authority.

62.

Ms. Wiley's lawsuit was filed in the appropriate Court under Georgia law and alleged retaliatory discharge in violation of O.C.G.A. § 45-1-4, as well as underlying unlawful conduct by Henry County employees and Commissioners.

63.

Ms. Wiley put Patrick and Hampton, her supervisors in the City of Atlanta Department of Law, on notice of her lawsuit after it was filed.

64.

Accordingly, Ms. Wiley's lawsuit constitutes a protected disclosure under O.C.G.A. § 45-1-4(d)(2).

65.

Ms. Wiley was terminated from her position at the City of Atlanta in violation of O.C.G.A. § 45-1-4(d)(2) as a direct result of her disclosure of violations of law by her former public employer, Henry County, Georgia and the Henry County Board of Commissioners.

66.

Defendants' wrongful termination of Ms. Wiley caused her great injury, including lost wages, the loss of accumulated fringe benefits of employment, loss of retirement income, diminished future earning capacity, tarnishment of her reputation, great uncertainty regarding her future, emotional distress, humiliation, and embarrassment.

## COUNT I
### Retaliation in Violation of 42 U.S.C. § 1983
### and the First Amendment Right to Free Speech
*(against all Defendants)*

67.

Ms. Wiley incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

68.

The First Amendment to the United States Constitution, made applicable to the states and local governments by the Fourteenth Amendment, protects the right of government employees to speak as citizens on matters of public concern.

69.

Ms. Wiley's lawsuit, alleging violations of the Georgia Whistleblower Act, O.C.G.A. 45-1-4, against Henry County, Georgia and the Henry County Board of Commissioners constituted protected speech that addressed a matter of significant

public concern − namely governmental misconduct and a breach of the public trust by elected officials.

70.

Ms. Wiley's lawsuit against Henry County and its Board of Commissioners was completely unrelated to her employment with the City of Atlanta Department of Law.

71.

Ms. Wiley's lawsuit did not threaten the City of Atlanta's ability to administer public services.

72.

Ms. Wiley's lawsuit did not interfere with the Department of Law's internal operations or with any internal orders or discipline.

73.

Ms. Wiley's right to petition the courts and file a whistleblower lawsuit against her former public employer outweighed any legitimate interest that Defendants may have had in promoting the efficiency of public services for the City of Atlanta.

74.

Defendants' decision to terminate Ms. Wiley's employment as a direct result of her protected speech violated Ms. Wiley's clearly established right to free speech under the First Amendment and 42 U.S.C. § 1983.

75.

Ms. Wiley, at all times, performed her duties as Chief Counsel in the Department of Law in a satisfactory manner.

76.

Defendants would not have terminated Ms. Wiley in the absence of her protected speech.

77.

Ms. Wiley was terminated at the discretion of City Attorney Hampton, pursuant to the City's policies and practices providing Hampton with discretion over employment decisions in the Department of Law.   Further, Hampton's decision to terminate Plaintiff was final and not subject to appeal or reversal by any other official or entity.

78.

Defendant City of Atlanta, by its policies and practices, retaliated against Ms. Wiley on account of her protected speech and deprived her of her right to

freely speak on matters of significant public concern. Defendant City of Atlanta had no legitimate government interest in terminating Plaintiff's employment.

79.

Defendants acted under color of state law to retaliate against Ms. Wiley for exercising her First Amendment right to freedom of speech, in violation of 42 U.S.C. § 1983.

80.

At all times relevant hereto, the law was clearly established that it was unlawful to retaliate against a public employee for exercising their free speech rights secured under the First Amendment to the United States Constitution.

81.

As a result of Defendants' unlawful actions, Ms. Wiley has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, damage to her reputation, and other indignities, in an amount to be proven at trial.

82.

Defendant Hampton willfully and wantonly disregarded Ms. Wiley's rights and acted in bad faith and with reckless indifference to Ms. Wiley's rights which

entitles Ms. Wiley to punitive damages from Defendant Hampton individually, pursuant to 42 U.S.C. §1983.

83.

Ms. Wiley is entitled to her reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT II
## RETALIATION UNDER THE
## GEORGIA WHISTLEBLOWER ACT, O.C.G.A § 45-1-4, et seq.
### *(against the City of Atlanta and*
### *Hampton in her official capacity as City Attorney)*

84.

Ms. Wiley incorporates by reference all of the foregoing paragraphs of this Complaint, as if fully set forth herein.

85.

Pursuant to O.C.G.A. § 45-1-4(d)(2), it is unlawful for a public employer to retaliate against a public employee for disclosing to a supervisor or government agency conduct that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

86.

Prior to her termination in January 5, 2015, Ms. Wiley engaged in protected activity under the Whistleblower Act by disclosing conduct that she reasonably believed was in violation of or noncompliance with a law, rule, or regulation.

87.

Defendants' termination of Ms. Wiley was in retaliation for her protected disclosure of conduct that she reasonably believed was a violation of a law, rule, or regulation under O.C.G.A. § 45-1-4.

88.

The termination of Ms. Wiley's employment amounted to an adverse action under O.C.G.A. § 45-1-4.

89.

Defendants' adverse action caused great damage to Ms. Wiley.

90.

The Defendants are liable for all economic and non-economic damages resulting from this retaliation, pursuant to O.C.G.A. § 45-1-4(e)(2)(D) and (E).

91.

Because reinstatement to her position as Chief Counsel in the Department of Law is not practicable, Ms. Wiley is entitled to front pay in lieu of reinstatement.

92.

Ms. Wiley is entitled to recover damages for lost wages, the loss of accumulated fringe benefits of employment, loss of retirement income, diminished future earning capacity, tarnishment of her reputation, great uncertainty regarding her future, emotional distress, humiliation, and embarrassment, pursuant to O.C.G.A. § 45-1-4(e)(2)(D) and (E).

93.

Ms. Wiley is entitled to recovery of her attorneys' fees and all other costs of litigation, pursuant to O.C.G.A. § 45-1-4(f).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the following relief:

(a)     That Plaintiff be awarded a declaratory judgment that Defendants are in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendment to the United States Constitution;

(b)     That Plaintiff be granted judgment against Defendants, as requested, under Counts I – II;

(c)     That this Court issue a permanent injunction against Defendants, prohibiting the City and the individual Defendants from engaging in any

employment practice or policy which retaliates against others similarly situated to Plaintiff because of their protected speech or opposition to unlawful practices, or because of their participation in this lawsuit;

(d)     That Plaintiff be awarded front pay as an alternative to reinstatement;

(e)     That Plaintiff recovers from Defendants back pay, benefits, and any other equitable relief that is owed, with prejudgment interest thereon;

(f)     That Plaintiff has and recovers compensatory damages in an amount to be determined by a jury;

(g)     That Plaintiff has and recovers punitive damages against Defendant Hampton, in her individual capacity, in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future, as to be determined by a jury;

(h)     That Plaintiff has and recovers her costs in this action and  reasonable attorneys' fees as provided by law; and

(i)     Any and other such further relief that this Court or the Finder of Fact deems equitable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted this 5th day of January, 2016.


                                    **THRASHER WORTH LLC**

                                    */s/ Kimberly A. Worth*
                                    Kimberly A. Worth
                                    Georgia State Bar No. 500790
                                    kworth@thrasherworth.com
                                    Katy Aultman
                                    Georgia State Bar No. 359702
                                    kaultman@thrasherworth.com

                                    *Attorneys for Plaintiff*

Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328
Telephone: (404) 760-6016
Facsimile: (404) 760-0225

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman (14 point) font, as required by the Court in Local Rule 5.l (C).

Respectfully submitted this 5th day of January, 2016.

**THRASHER WORTH LLC**

*/s/ Kimberly A. Worth*
Kimberly A. Worth
Georgia State Bar No. 500790
kworth@thrasherworth.com
Katy Aultman
Georgia State Bar No. 359702
kaultman@thrasherworth.com

*Attorneys for Plaintiff*

Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328
Telephone: (404) 760-6016
Facsimile: (404) 760-0225